# JAMES PETERSON v. FARGO-MOORHEAD STREET RAIL-WAY COMPANY.

## (164 N. W. 42.)

**Common carriers — defined — street railway company — carrying of passengers — is common carrier.**

1. Under § 6235, Compiled Laws of 1913, everyone who offers to the public to carry persons, property, or merchandise is a common carrier of whatever it thus offers to carry. A street railway company operating its lines of street railways upon the streets of a city, or extending from one city to another, or into rural communities, the principal business of which is conveying passengers from point to point on its lines for hire, is a common carrier.

**Fellow-servant rule — common carriers — application abolished — negligence of officers, agents, or employees — defects in appliances, cars, or engines — track — machinery — roadbed — ways or works — Federal Constitution — amendments — not contravened by statute.**

2. The fellow-servant rule, so far as it applies to common carriers, is by § 4804 of the Compiled Laws of 1913, abolished, and in the language of such statute, "every common carrier shall be liable to any of its employees, or in case of the death of an employee, to his personal representative, for the benefit of his widow, children, or next of kin, for all damages which may result from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways or works." Such statute is not unconstitutional, nor does it contravene any of the provisions of the state or Federal

Note.—Laws abrogating the fellow-servant rule as applied to railroads are generally upheld by the courts upon the theory that, the employment of railroading being especially hazardous, the legislatures are justified in passing laws affecting it which, will apply to railroads only, and such laws will not be deemed unconstitutional as denying to railroads equal protection of the laws, as will be seen by an examination of the notes in 12 L.R.A.(N.S.) 1040 and 47 L.R.A.(N.S.) 84, on validity of statutes abrogating fellow-servant rule. But it is generally held, as will be seen by the cases collated in a note in 17 L.R.A.(N.S.) 117, that such statutes do not apply to street railways for the reason that the hazards and dangers incident to the operation of ordinary steam or commercial railroads are not present in the operation of street railways and that it was these hazards from which the legislature intended to protect employees. The case of PETERSON v. FARGO-MOORHEAD STREET R. Co. is to be reconciled with this rule by the fact that the statute in North Dakota applies to common carriers generally and not specifically to railroads.

Constitutions, nor does it contravene the 14th Amendment to the Federal
Constitution, which provides that "no state shall make or enforce any law
which shall abridge the privileges or immunities of citizens of the United
States."

**Common carriers — servants — negligence — contributory negligence — jury**
**— questions for — damages — how measured.**

3. Under § 4805, Compiled Laws of 1913, the questions of negligence and
contributory negligence are exclusively questions for the jury; and where the
negligence of the employer is gross as compared with the contributory negli-
gence of the servant, the fact that the servant has thus been guilty of contribu-
tory negligence shall not defeat the recovery of damages, but the damages,
by reason of such contributory negligence of the servant, may be diminished
by the jury in proportion to the amount of negligence attributable to such
servant or employee.

**Courts — taking case from jury — error — conflicting testimony — as to sub-**
**ject-matter involved — question for jury.**

4. When there is conflicting testimony as to a certain subject-matter involved
in the litigation from which minds of average men might draw different con-
clusions, the question is one for the jury. *Held* in this case, there was such
conflicting testimony, and the court erred in directing a verdict for the
defendant.

**Courts — composition of — constituent parts — judge — determines law of case**
**— jury part of court — in trial of issue of fact.**

5. As applied to the tribunal which tries issues of both law and fact, the
court is not composed of the judge who is presiding at the trial. The court
in such case is composed of the judge who presides or is acting at the trial
of the issues of law and fact in such court, and also of the jury. The judge
is only one of the constituent parts of such court, and as such his duty is
to define the law of the case. The jury is also a material constituent part of
the court in such case, and its exclusive duty is to pass and render judgment
upon the facts in the case. Each constituent element of the court, as just
defined, has exclusive jurisdiction within its own sphere.

**Street car — conductor of — action by against company — negligence — dam-**
**ages — jury — questions for — contributory negligence — also for jury.**

6. Where the conductor of a street car maintains an action against the
defendant, his employer, a street railway company, on the ground of the
defendant's negligence in keeping and maintaining its switch in a loose, im-
proper, and imperfect condition, which caused the car of which the plaintiff
was in charge to be thrown from the track while passing over such switch,
the condition of the switch and the negligence of the defendant in maintaining
such switch in its imperfect or improper condition, if it were so maintained,
was a question exclusively for the jury; and where there was conflicting testi-

mony as to the rate of speed of the car at the time such car passed over such switch, the contributory negligence of the servant or servants, if any, was also a question exclusively for the jury under the statute hereinbefore referred to. All questions of negligence and contributory negligence are exclusively for the jury.

Opinion filed July 14, 1917.

Appeal from the District Court of Cass County, *Chas. A. Pollock*, J. Reversed.

*M. A. Hildreth*, for appellant.

The fellow-servant rule is abolished in this state in so far as concerns actions against common carriers of persons and property, and neither the negligence of the fellow servant, nor that of the plaintiff, is a bar to an action for damages. The statute is constitutional. Comp. Laws 1913, §§ 4804, 4805.

To strike down a state statute as violative of the Federal Constitution, one must show that he is within the class with respect to whom the act is unconstitutional, and must show that the alleged unconstitutionality feature injures him, and so operates as to deprive him of rights protected by the Federal Constitution. Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 58 L. ed. 713, 34 Sup. Ct. Rep. 359; Southern R. Co. v. King, 217 U. S. 524, 54 L. ed. 868, 30 Sup. Ct. Rep. 594; Standard Stock Food Co. v. Wright, 225 U. S. 540, 550, 56 L. ed. 1197, 1201, 32 Sup. Ct. Rep. 784; Rosenthal v. New York, 226 U. S. 260, 271, 57 L. ed. 212, 217, 33 Sup. Ct. Rep. 27, Ann. Cas. 1914B, 71.

It is well settled by the decisions of the United States Supreme Court that the equal protection of the law is guaranteed by the 14th Amendment, and that that is satisfied if the law applies equally to all persons in like situations and conditions. Chicago, B. & Q. R. Co. v. Iowa (Chicago, B. & Q. R. Co. v. Cutts), 94 U. S. 155, 163, 24 L. ed. 94, 95; International Harvester Co. v. Missouri, 234 U. S. 199, 210–214, 58 L. ed, 1276, 1281–1283, 52 L.R.A.(N.S.) 525, 34 Sup. Ct. Rep. 859; Duncan v. Missouri, 152 U. S. 382, 38 L. ed. 487, 14 Sup. Ct. Rep. 570; German Alliance Ins. Co. v. Hale, 219 U. S. 307, 55 L. ed. 229, 31 Sup. Ct. Rep. 246; Williams v. Arkansas, 217 U. S. 79, 54 L. ed. 673, 30 Sup. Ct. Rep. 493, 18 Ann. Cas. 865; Mutual

Loan Co. v. Martell, 222 U. S. 225, 233, 56 L. ed. 175, 178, 32 Sup. Ct. Rep. 74, Ann. Cas. 1913B, 529; Aluminum Co. v. Rumsey, 222 U. S. 251, 255, 56 L. ed. 185, 189, 32 Sup. Ct. Rep. 76, 1 N. C. C. A. 251.

In this case the proof shows beyond question that the street car was derailed because of the improper condition of the switch either from lack of repairs or improper repairs. There being evidence upon this question, even though disputed, it still made a case for the jury, and the court committed reversible error in taking the case from the jury. Grand Trunk R. Co. v. Cummings, 106 U. S. 700, 27 L. ed. 266, 1 Sup. Ct. Rep. 493; Wyldes v. Patterson, 31 N. D. 310, 153 N. W. 630; 10 Rose's Notes (U. S.) 438, 439; The Phœnix, 34 Fed. 760; Clyde v. Richmond & D. R. Co. 59 Fed. 394; The Joseph B. Thomas, 46 L.R.A. 58, 30 C. C. A. 333, 56 U. S. App. 619, 86 Fed. 658, 4 Am. Neg. Rep. 105; Richmond & D. R. Co. v. George, 88 Va. 223, 228, 13 S. E. 429; Norfolk & W. R. Co. v. Thomas, 90 Va. 209, 44 Am. St. Rep. 906, 17 S. E. 884; Norfolk & W. R. Co. v. Ampey, 93 Va. 108, 25 S. E. 226; Thomp. Neg. §§ 4853, 4856; Siegel, C. & Co. v. Troka, 2 L.R.A. (N.S.) 647, and note (218 Ill. 559, 109 Am. St. Rep. 302, 75 N. E. 1053, 19 Am. Neg. Rep. 166); Kern v. DeCastro & D. Sugar Ref. Co. 24 N. Y. S. R. 748, 5 N. Y. Supp. 548; Shearm. & Redf. Neg. 5th ed. § 188; 2 Labatt, Mast. & S. § 184; Lutz v. Atlantic & P. R. Co. 16 L.R.A. 819, note.

. If there is any legal evidence tending to prove negligence on the part of the defendant, then the question is one for the jury, and can only be taken from the jury when only one inference can be drawn. Severtson v. Northern P. R. Co. 32 N. D. 200, 155 N. W. 11; Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Felton v. Midland Continental R. Co. 32 N. D. 223, 155 N. W. 23.

*Fowler & Green,* for respondent.

In the absence of a statutory requirement, mere absence of blocking of a switch or frog does not show actionable negligence. Cooper v. Baltimore & O. R. Co. 16 L.R.A.(N.S.) 716, 86 C. C. A. 272, 159 Fed. 82, 14 Ann. Cas. 693, and cases.

The defendant is not an insurer of the condition of its switches. It is only required to use ordinary care to furnish reasonably safe

switches and to keep them in a reasonably safe condition. St. Louis, I. M. & S. R. Co. v. Needham, 25 L.R.A. 835, 11 C. C. A. 56, 27 U. S. App. 227, 63 Fed. 107; Shadford v. Ann Arbor Street R. Co. 111 Mich. 390, 69 N. W. 661, 1 Am. Neg. Rep. 88; Ness v. Great Northern R. Co. 25 N. D. 572, 142 N. W. 165; Great Northern R. Co. v. Johnson, 125 C. C. A. 123, 207 Fed. 521; O'Neill v. Chicago, R. I. & P. R. Co. 66 Neb. 638, 60 L.R.A. 445, 92 N. W. 731, 1 Ann. Cas. 337; Prybileski v. Northwestern Coal R. Co. 98 Wis. 413, 74 N. W. 117; Titus v. Bradford, B. & K. R. Co. 136 Pa. 618, 20 Am. St. Rep. 944, 20 Atl. 517; Elliott, Railroads, § 1272, and cases.

Plaintiff must recover, if at all, upon the negligence alleged in the complaint. In this he failed. Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960.

Where specific and particular acts of negligence are alleged and relied upon for a recovery, plaintiff is confined to them. Ibid.; Birmingham R. Light & P. Co. v. O'Brien, 185 Ala. 617, 64 So. 343; Chicago Union Traction Co. v. Leonard, 126 Ill. App. 189; Cook v. Newhall, 213 Mass. 392, 101 N. E. 72; Israel v. United R. Co. 172 Mo. App. 656, 155 S. W. 1092; Williams v. Chicago, B. & Q. R. Co. 169 Mo. App. 468, 155 S. W. 64.

The trial court committed no error in holding that appellant failed to make out his case, and very properly directed a verdict for defendant. Ness v. Great Northern R. Co. 25 N. D. 572, 142 N. W. 165; Great Northern R. Co. v. Johnson, 125 C. C. A. 183, 207 Fed. 521; Curtin v. Boston Elev. R. Co. 194 Mass. 260, 80 N. E. 522; Donnelly v. New York & H. R. Co. 3 App. Div. 408, 38 N. Y. Supp. 709; McCann v. Interurban Street R. Co. 117 App. Div. 188, 102 N. Y. Supp. 296; Beebe v. St. Louis Transit Co. 206 Mo. 419, 12 L.R.A.(N.S.) 760, 103 S. W. 1019; Jenkins v. St. Louis City R. Co. 105 Minn. 504, 20 L.R.A.(N.S.) 401, 117 S. W. 928.

Although there is oral testimony to prove an alleged fact upon the existence of which a litigant's cause of action or defense depends, still if the admitted physical facts demonstrate to a certainty its nonexistence, the court properly directs the verdict. Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122; Samulski v. Menasha Paper Co. 147 Wis. 285, 133 N. W. 142; Musbach v. Wisconsin Chair Co. 108 Wis. 57, 84 N. W. 36.

Where oral testimony is squarely contrary to the undisputed physical facts, there is no question for the jury. Hall v. Northern P. R. Co. 16 N. D. 60, 111 N. W. 609, 14 Ann. Cas. 960; Musbach v. Wisconsin Chair Co. 108 Wis. 57, 84 N. W. 36.

The plaintiff, the conductor, and the motorman were fellow servants. Chicago, I. & L. R. Co. v. Barker, 169 Ind. 670, 17 L.R.A.(N.S.) 542, 83 N. E. 369, 19 Ann. Cas. 375; Berg v. Seattle R. & S. R. Co. 44 Wash. 14, 120 Am. St. Rep. 968, 87 Pac. 34; Chicago City R. Co. v. Leach, 208 Ill. 198, 100 Am. St. Rep. 216, 70 N. E. 222; Savage v. Nassau Electric R. Co. 42 App. Div. 241, 59 N. Y. Supp. 225, affirmed in 168 N. Y. 680, 61 N. E. 1134; Van Wickle v. Manhattan R. Co. 23 Blatchf. 422, 32 Fed. 278; Rittenhouse v. Wilmington Street R. Co. 120 N. C. 544, 26 N. E. 922, 2 Am. Neg. Rep. 224; Baltimore Trust & G. Co. v. Atlanta Traction Co. 69 Fed. 358.

The doctrine of *res ipsa loquitur* has no application here. The pleadings were not framed nor the cause tried upon any such theory. Particular and specific acts of negligence are pleaded and relied upon, and that disposes of the question, and the facts do not warrant its application. Birmingham R. Light & P. Co. v. O'Brien, 185 Ala. 617, 64 So. 343; Chicago Union Traction Co. v. Leonard, 126 Ill. App. 189; Cook v. Newhall, 213 Mass. 392, 101 N. E. 72; Israel v. United R. Co. 172 Mo. App. 656, 155 S. W. 1092; Williams v. Chicago, B. & Q. R. Co. 169 Mo. App. 468, 155 S. W. 64; Benedict v. Potts, 88 Md. 52, 41 L.R.A. 478, 40 Atl. 1067, 4 Am. Neg. Rep. 484; 6 Thomp. Neg. § 7635.

"The duty of keeping switches closed and locked while not in use was not one of the absolute duties of the defendant, but was an assignable duty relating to a detail of operation which could properly be delegated to an employee." Dixon v. Grand Trunk Western R. Co. 147 Mich. 667, 111 N. W. 200; Chicago, I. & L. R. Co. v. Barker, 169 Ind. 670, 17 L.R.A.(N.S.) 542, 83 N. E. 369, 14 Ann. Cas. 375, and cases; Daves v. Southern P. Co. 98 Cal. 19, 35 Am. St. Rep. 133, 32 Pac. 708, 13 Am. Neg. Cas. 367; St. Louis, I. M. & S. R. Co. v. Needham, 25 L.R.A. 833, 11 C. C. A. 56, 27 U. S. App. 227, 63 Fed. 107; Denver & R. G. R. Co. v. Sipes, 23 Colo. 226, 47 Pac. 287; Miller v. Southern P. Co. 20 Or. 285, 26 Pac. 70.

The section of our statute relied upon has no application to street

railway companies, but only applies to railroad companies, the employees of which are engaged in the performance of duties of a peculiarly hazardous nature.    Comp. Laws 1913, § 4804.

If this statute includes within its terms other common carriers than steam railroads, it violates § 11, Constitution of North Dakota, which provides that "all laws of a general nature shall have a uniform operation."    N. D. Const. § 20.

But the statute has no application here.    There are two rules of construction in considering such a statute.    Massachusetts Loan & T. Co. v. Hamilton, 32 C. C. A. 46, 59 U. S. App. 403, 88 Fed. 589; Norfolk & P. Traction Co. v. Ellington, 108 Va. 245, 17 L.R.A.(N.S.) 117, 61 S. E. 779; Northern P. R. Co. v. Barnes, 2 N. D. 310, 51 N. W. 386; Erskine v. Nelson County, 4 N. D. 66, 27 L.R.A. 696, 58 N. W. 348; Folsom v. Kilbourne, 5 N. D. 402, 67 N. W. 291.

Words of general import are limited by words of restricted import immediately following and relating to the same subject.    36 Cyc. 1119.

The word "railroad" as used in this statute is held to mean and have reference to railroads proper, or commercial railroads,—such railroads as are engaged in business known to be inherently dangerous. Norfolk & P. Traction Co. v. Ellington, 108 Va. 245, 17 L.R.A.(N.S.) 117, 61 S. E. 779; Funk v. St. Paul City R. Co. 61 Minn. 435, 29 L.R.A. 208, 52 Am. St. Rep. 608, 63 N. W. 1099, 16 Am. Neg. Cas. 326; Sams v. St. Louis & M. River R. Co. 174 Mo. 53, 61 L.R.A. 475, 73 S. W. 686; Fallon v. West End Street R. Co. 171 Mass. 249, 50 N. E. 536, 4 Am. Neg. Rep. 288; Omaha & C. B. Street R. Co. v. Interstate Commerce Commission, 230 U. S. 324, 57 L. ed. 1501, 46 L.R.A.(N.S.) 385, 33 Sup. Ct. Rep. 890; Gunn v. Minneapolis, St. P. & S. Ste. M. R. Co. 34 N. D. 418, 158 N. W. 1004.

If the statute in question includes within its terms other common carriers than steam railroads, it is unconstitutional.    Priestly v. Fowler, 3 Mees. & W. 1, 150 Eng. Reprint, 1030, Murph. & H. 305, 7 L. J. Exch. N. S. 42, 1 Jur. 987, 19 Eng. Rul. Cas. 102; Kiley v. Chicago, M. & St. P. R. Co. 138 Wis. 215, 119 N. W. 309, 120 N. W. 756, 21 Am. Neg. Rep. 394.

This statute relates wholly to those engaged in similar occupations, and to like circumstances and conditions.    Edmonds v. Herbrandson,

2 N. D. 271, 14 L.R.A. 725, 50 N. W. 970; Chicago, M. & St. P. R. Co. v. Westby, 47 L.R.A.(N.S.) 97, 102 C. C. A. 65, 178 Fed. 619.

GRACE, J. This action is one maintained by the plaintiff against the defendant on the ground of negligence. The complaint is in the ordinary form, and alleges the negligence of the defendant and its want of due care and attention to its duty in that the defendant conducted itself so carelessly, negligently, and unskilfully that by and through the carelessness, negligence, and fault of said defendant and its servants, it provided, used, and suffered to be used an insufficient, defective, and unsafe switch, frogs, and connecting appliances on said switch leading from its main line on Eleventh street North near the intersection of Third avenue North in said city of Fargo, into the defendant's car barn.

The bill of particulars furnished the defendant by the plaintiff, and which is a part of the complaint, is as follows:

"Pursuant to demand by defendant for a bill of particulars served upon plaintiff on December 31, 1915, demanding that said allegations in paragraph 4 of plaintiff's complaint be made more definite and certain, said allegations reading as follows: 'That at all times hereinabove mentioned the said defendant conducted itself so carelessly, negligently, and unskilfully that by and through the carelessness, negligence, and default of said defendant and its servants it provided, used, and suffered to be used an unsafe, defective, and insufficient roadbed, unsafe, defective, and insufficient switches, frogs, and connecting appliances at its said switch leading from its main line on Eleventh street North near the intersection of Third avenue North in said city of Fargo, into said car barn, all of which it had notice, but the said defects and the dangers attendant thereupon were unknown to the said plaintiff,' we respectfully submit the following:

"1st. That the roadbed was unsafe, defective, and insufficient in this,—that the defendant's track at said point was not properly laid, or, if in the first instance said rails were properly laid, they had become through use and wear and tear unsafe to the knowledge of defendant; that said rails and joints were loose and insecure to such an extent that the weight of defendant's car in passing over the same would cause said rails to depress and sink and become springy and unlevel;

and were not laid upon a proper foundation; that said defendant's road-bed was otherwise unsafe, defective, and insufficient.

"2d. That the switches, frogs, and connecting appliances at said switch, as alleged in the complaint herein, were unsafe, defective, and insufficient in this,—that the same had become worn, broken, and un-safe for use; that they were not modern appliances used for such pur-poses; that said switches, frogs, and appliances were not equipped with springs to make them safe and secure for traffic; that for defendant's convenience and through the negligence of the defendant, the said defendant used or caused to be used in connection with said switches, frogs, or appliances a common piece of gas pipe which was loosely inserted between the rails for the purpose of holding said switches, frogs, appliances in place; that the cars in passing over said switches by rea-son of their weight and otherwise crushed and flattened said gas pipe, and caused the same to slip out of place and throw said switch an im-proper time while defendant's car was passing thereover; that said switches, frogs, and connecting appliances were otherwise unsafe, de-fective, and insufficient.

"3d. That the plaintiff by furnishing this bill of particulars in no manner waives any of his rights under his complaint herein, but expressly reserves all rights thereunder, and as a part hereof the plain-tiff does hereby refer to and make a part hereof his complaint herein, in no manner limiting the scope thereof, and does hereby further except to the right of the defendant to the bill of particulars as demanded."

The plaintiff alleges that he has suffered great and permanent in-juries external and internal, and great mental and physical pain and distress, and is prevented from attending to his duties as aforesaid, and alleges that he has spent large sums of money for medical at-tendance and nursing, and has lost all the wages he otherwise would have earned, and will continue to be subject to all the foregoing, all to his damage in the sum of $25,000.

Defendant by way of answer sets up a general denial to the allega-tions of the complaint and bill of particulars, admitting only that it is a corporation operating street cars propelled by electricity at the point mentioned in the complaint and other places in the city of Fargo. The answer further contains allegations by way of defense, setting forth the alleged contributory negligence of the plaintiff, the carelessness and

negligence of the fellow servant or servants of plaintiff, and that the plaintiff knew the nature, character, and condition of said switch and appliances referred to in said complaint and bill of particulars, the manner in which the same was operated, the dangers incident to the operation of street cars over and upon such switch and appliances, and assumed all such dangers; and that injuries and damages resulting from the operation of street cars were assumed by plaintiff as incident of employment as conductor for defendant.

The material facts in the case are in substance as follows: Plaintiff brought this action against the defendant to recover for personal injuries. The plaintiff was employed by the defendant as a street railway conductor, and his duties were to assist in the operating of street cars in the capacity of a conductor. While plaintiff was engaged in the operating of such street car in the capacity of conductor, and riding in the rear vestibule of the car as it approached the switch in question, and partially passed thereover, the front wheels of the car passed over the switch and continued on the main track, but when the rear wheels were about to pass over such switch the car left the track and the plaintiff was thrown from such car to the ground. The case was tried in the district court before Honorable Charles A. Pollock, Judge, and a jury. At the close of the testimony the court, upon the motion of the defendant, directed the jury to return a verdict for the defendant and against the plaintiff, principally on the alleged ground and theory that the motorman, who also assisted in the operation of such car, and the conductor of such car, the plaintiff herein, were fellow servants, and that it was negligence of the motorman which was the proximate cause of the injury, and on the theory that the plaintiff was a fellow servant of the motorman. The defendant contends for that reason it was not liable for any injuries resulting to the plaintiff by reason of the negligence, if any, of the motorman.

The case is one of much importance, necessitating not only the analysis of the law concerning fellow servants, contributory negligence, assumption of risk by the servant, the negligence of the motorman, and the negligence of the defendant, but also the analysis of court machinery, in order to determine what are the provincial rights, duties, and privileges of the court, and what are the provincial rights, duties, and privileges of the jury, in cases involving matters of both law and fact.

The principle that one servant is a fellow servant of another servant, and as such assumed all risk of injury which might result from the negligence of such fellow servant, in its inception, had its origin in the mind of a judge in England, Lord Abinger, who tried a trivial suit for damages of one Priestly, a servant, against one Fowler, the master, who was a butcher, the facts of which were as follows: The defendant, Fowler, desired the servant to go with certain goods of the defendant in a van belonging to the defendant, which was operated by another servant of the defendant. The plaintiff went. The van, being overloaded, broke down, and plaintiff was thrown off and his thigh broken. The court held in that case that the master was not liable to the injured servant, on the theory that to do so would imply an obligation on the part of the master to take more care of the servant than the servant might reasonably be expected to exercise in his own behalf; and for the further reason that to allow the servant to omit diligence and caution on behalf of the master to protect him from the misconduct or negligence of others who served him, and which diligence and caution, while they protect the master, are better security against injury which the servant sustains by the negligence of others engaged under the same master than any recourse against the master for damages could possibly afford; and out of this small case originated the principle that where a servant is injured without negligence on his own part no recovery can be had against the master, where the negligence which caused the injury was that of another servant in the same line of employment, or, in other words, a fellow servant. Prior to the time of this case the rule had evidently been different. A similar question did not arise in England until 1850, the Priestly v. Fowler Case having come up in 1837, 3 Mees. & W. 1, 150 Eng. Reprint, 1030, Murph. & H. 305, 7 L. J. Exch. N. S. 42, 1 Jur. 987, 19 Eng. Rul. Cas. 102. In the year 1850, in the case of Hutchinson v. York, N. & D. R. Co. 5 Exch. 343, 155 Eng. Reprint, 150, 6 Eng. Ry. & C. Cas. 580, 19 L. J. Exch. N. S. 296, the rule was first directly applied to railway companies. The question in this case was whether the defendants were liable for injury to one of their servants by collision while traveling in one of the carriages in the discharge of his duties as their servant, and it was held that there was no liability. The theory of the principle thus enunciated is, if the servant when so injured by negligence

of a fellow servant is allowed to recover against the master, it will make such servant less careful of his own safety; in other words, it would tend to make him negligent. Such cases laid down the principle that if the servant could not recover against the master for injuries occasioned by the negligence of a fellow servant, he would not only exercise more care in his own behalf, but that he would also exercise a superintending care and observation over the conduct and actions of the fellow servant. The same principle was also brought into existence in America by the decision of Murray v. South Carolina R. Co. 1 McMull. L. 385, 36 Am. Dec. 268, decided by the South Carolina court of errors in 1841. Another case which may be said to have been adopted as the leading exposition of this principle of law in the United States is Farwell v. Boston & W. R. Corp. 4 Met. 49, 38 Am. Dec. 339, 15 Am. Neg. Cas. 407, the opinion of which court was written by Chief Justice Shaw, in which opinion the court said that where a railway company employed a switch tender who was careful and trusty in his general character, and, after he had been long in their service, employed an engineer who knew the character of the switch tender, the company was not answerable to the engineer for an injury received by him in consequence of the carelessness of the switch tender in the management of the switches. This case formally established the doctrine in the United States, so far as the common law was concerned, of the nonliability of the master for an injury to a servant which resulted from the negligence of a fellow servant. The reasoning which was contained in such decision was rapidly adopted by other masters who were large employers of labor or servants, and such reasoning became rapidly a part of their defense where it was possible to interpose it in order to avoid liability for any injury to a servant by reason of the negligence or apparent negligence of a fellow servant. The rule established in such case grew very rapidly and was subsequently applied in thousands of other cases. It is a rule which came into existence without the authority of any parliament or legislature, but had its origin and inception wholly and entirely within the mind of the court. It has never been contended that such rule was based upon justice, but instead thereof the same has been based upon policy and convenience. The result has been that the rights of the servant have been weighed, so to speak, in the scales of policy and convenience, and not

in the scales of justice. It was a policy and convenience that benefited and protected others, and not the servant. The principle of which we have spoken held the servant accountable and responsible for the negligent acts of his fellow servant, and imputed all such negligence to the fellow servant, and not to the master; and as we have stated before, upon the principle, or, more accurately speaking, the fiction,—that by doing so the servant would exercise more care concerning his own conduct and also exercise a superintending care over his fellow servant's acts. So universally did this court-made law permeate the jurisprudence of the various states that it became very difficult for a servant who received injury in the course of his employment while associated with other employees to recover damages for any injury which he might sustain while in such employ, for the reason that his injuries were always attributed to the negligence of some co-employee engaged in the same line of work for the same master.

In order to protect the employee from the rigidity of such rule which had been carried to a great extent, different states of the Union found it necessary to enact legislation dealing with this subject, all of which is similar to, or of the same nature and effect as, our § 4804 of the Compiled Laws of 1913, which is as follows: "Every common carrier shall be liable to any of its employees, or in case of the death of an employee, to his personal representative for the benefit of his widow, children or next of kin, for all damages which may result from the negligence of any of its officers, agents, or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways, or works."

The defendant claims that said section is unconstitutional, being in conflict with the 14th Amendment to the Constitution of the United States, which is as follows: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, . . . nor deny to any person within its jurisdiction the equal protection of the laws."

We are clear that § 4804 in no way violates the 14th Amendment to the Constitution of the United States. Such section is a law which the legislature of this state had full authority to enact and prescribe. As we have seen, many of the various states of the Union have a law similar in nature and effect to our § 4804, among which may be

mentioned Kansas and Iowa. The law of Kansas relating to the same subject-matter came before the Supreme Court of the United States for construction in the case of Missouri P. R. Co. v. Mackey, 127 U. S. 205, 32 L. ed. 107, 8 Sup. Ct. Rep. 1161. In such case it was held that a law of the nature of the one under consideration in no manner contravened the provisions of the 14th Amendment to the Constitution of the United States. The Supreme Court of the United States in its analysis of the law of Kansas of 1874 uses the following language: "The only question for our examination as the law of 1874 is presented to us in this case [the Kansas law of 1874] is whether it is in conflict with clauses of the 14th Amendment. The supposed hardship and injustice consist in imputing liability to the company where no personal wrong or negligence is chargeable to it or to its directors. But the same hardship and injustice, if there be any, exist when the company, without any wrong or negligence on its part, is charged for injuries to passengers. Whatever care and protection may be taken in conducting its business or in selecting its servants, if injury happen to the passengers from the negligence or incompetency of the servants, responsibility therefor at once attaches to it. The utmost care on its part will not relieve it from liability if the passenger injured be himself free from contributory negligence. The law of 1874 extends this doctrine, and fixes a like liability upon railroad companies where injuries are subsequently suffered by employees, though it may be by the negligence or incompetency of a fellow servant in the same general employment and acting under the same immediate direction. That its passage was within the competency of the legislature we have no doubt."

The statute of Iowa on the same subject is of the same nature as the one in Kansas. It was upheld by the supreme court of the state of Iowa, and an appeal was taken from the judgment of the Iowa supreme court to the Supreme Court of the United States, and the Supreme Court of the United States affirmed the judgment upon the same principle that such law in no manner conflicted with the 14th Amendment to the Constitution of the United States. The title of the case was Minneapolis & St. L. R. Co. v. Herrick, 127 U. S. 210, 32 L. ed. 109, 8 Sup. Ct. Rep. 1176. It would appear to be conclusively decided, therefore, that laws of the nature of those we are considering which are passed by the various legislatures are con-

stitutional, and in no manner contravene the provisions of the 14th Amendment to the Constitution of the United States.  Section 4804, Compiled Laws of 1913, we hold to be constitutional and in no manner repugnant to nor contravening any of the provisions of the 14th Amendment to the Constitution of the United States.  Such section of our law abrogates the common law as to fellow servants, and fixes the liability of the master to the employee for any injury to him caused by the negligence of any of the officers, agents, or employees of the master, or by reason of any defects or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, way, or works; and if the death of the employee ensues by reason of such injury a right of action for such liability of the master for such injury survives for the benefit of the widow, children, or next of kin.

In connection with the law of fellow servant, we may also refer to our statute upon contributory negligence, one of the defenses in this action being contributory negligence.  Section 4805, Compiled Laws of 1913, is as follows: "In all actions hereinafter brought against any common carrier to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, where his contributory negligence was slight and that of the employer was gross in comparison, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.  All questions of negligence and contributory negligence shall be for the jury."

The law as expressed in such section to some extent relieves from evils which have resulted from the doctrine of contributory negligence.  The doctrine of contributory negligence is not grounded in common sense, and is really in conflict with the laws of human nature. A person in normal condition and being of sound mind, that is, having the power to distinguish between right and wrong, and having the power to know that which will benefit his body and that which will injure it,—would not voluntarily place his body in a place where it could be injured.  If, for instance, an employee engaged in assisting in the operation of a saw in and about a sawmill should, while performing his duties, have his arm severed from his body, it can hardly be said that he would willingly or voluntarily do any act which would

bring about such pain, suffering, and disfigurement to his person. It is also difficult to believe that one having knowledge of such danger, or who had any appreciable amount of reason to apprehend such danger, would not use at least ordinary care to safeguard his body, and avoid the sufferings resultant from such injury, and the humiliation of the disfigurement of his body, and the inconvenience resulting therefrom. It is contrary to the principles of human nature to believe that any person in any employment would be injured and maimed if he could himself, by the exercise of ordinary care, prevent it.

What is a true measure of ordinary care which should be exercised by a servant under a given state of circumstances is a question fraught with great difficulty. Different persons possess very different qualities of mind. One person's mind in case of danger may be clear, his decision as to what is best to do in a moment of extreme danger may be instantaneous, and he may act with great promptitude. Another person under the same circumstances may possess a mind slow to act, and may be subject to indecision and inability to decide in a moment or a short space of time what is proper and safe to do, and the best and safest manner in which to act in order to protect himself. One person may be of an observing turn of mind; hardly anything can transpire within his range of vision which he does not observe and make mental note of. Another may lack this quality almost entirely. One person may be of a cautious character and almost continually apprehensive of danger, while another may be largely deficient in this quality; and so we might proceed to point out many other qualities which exist in different degrees in different individuals, and that which would be a standard for ordinary care in one class would hardly answer the same purpose in another class. If a servant in the discharge of his duties in which he is injured can at all be said to be guilty of contributory negligence in view of the natural law that each will strive to protect his body against injury resulting in pain, disfigurement, and lack of future full enjoyment of the use of the different members of the body, such as the arms and the limbs, and the great inconvenience which ensues from the loss of any such members, it can certainly be said to be only slight contributory negligence, or the failure to use ordinary care to the best ability of the servant injured, to a slight degree, so we think that possibly the legislature had some of these

principles in mind when it passed § 4805, Compiled Laws of 1913, which we have quoted in full, wherein the legislature enacted what may be termed the law of comparative negligence, and provided that all questions of negligence and contributory negligence shall be for the jury. In the case at bar there was a question of negligence and contributory negligence upon which there was conflicting testimony. There was testimony also in regard to the condition of the switch at which the injury occurred, as to whether the switch was properly blocked, and as to the construction of the switch and its condition, as to whether it was worn, broken, or not in proper condition for use. In other words, the condition of the switch was one of the questions in dispute concerning which there was testimony as to whether it was in the proper condition, or as to whether or not the blocking of the switch was necessary to its operation and use in a reasonably safe manner, and from the testimony concerning such switch reasonable minds might draw different conclusions. We think, therefore, whether or not the switch was in proper condition, was a question of fact for the jury. Whether the defendant was negligent in not furnishing safe appliances in the way of a proper switch was a question for the jury. Whether the switch was properly blocked, whether the same was worn or in improper condition, and whether the different parts of the switch were in proper condition, and whether an iron plug used in such switch, being an iron pipe, was more dangerous than a wooden plug, were all questions under the testimony for the jury.

Another question which the defendant has raised is that it claims not to be a common carrier. Common carriers are such as are defined by § 6235, Compiled Laws of 1913. Such section is as follows: "Everyone who offers to the public to carry persons, property, or merchandise is a common carrier of whatever it thus offers to carry." The defendant is a street railway company of the city of Fargo, operating its lines of street railways upon the streets of the city of Fargo, and extending them from Fargo to the city of Moorhead in the state of Minnesota, and its principal business is conveying passengers from point to point upon its lines for hire. Such street railway company is therefore a common carrier. See Smith v. St. Paul City R. Co. 32 Minn. 1, 50 Am. Rep. 550, 18 N. W. 827, 4 Am. Neg. Cas. 220; Watson v. St. Paul City R. Co. 42 Minn. 46, 43 N. W. 904. In the case of Watson v.

St. Paul City R. Co., the supreme court of the state of Minnesota used the following language: "The defendant is a carrier of passengers, and as respects the construction and condition of its track and roadbed, as well as its cars and their management, the extreme rule as stated by the court is applicable generally as in the case of other carriers." In the case of Spellman v. Lincoln Rapid Transit Co. 36 Neb. 890, 20 L.R.A. 316, 38 Am. St. Rep. 753, 55 N. W. 270, 9 Am. Neg. Cas. 538, it was held that street railway companies are common carriers of passengers for hire, and that their liability was the same as of other common carriers upon common-law principles. The defendant claims that it is not a common carrier, contending that such name applies more exclusively to railroads proper, the cars on which are drawn by engines, the energy for which is supplied by steam. What motor power is used in the operation of a railway is not the test. It is possible to operate street railways with motor power other than electricity, and it is possible, and in the future may become the custom, to operate railroads by electricity. What motor power is used is immaterial. The main proposition is, What is the character of the employment in which they are engaged? If a railroad company or a street railway, whether operated by steam or electricity, are engaged in transporting persons from place to place or from point to point on their lines, and charge such persons for such transportation, they and each of them are common carriers for hire. In the absence of statutes circumscribing their powers, street railways may carry property and freight as well as passengers. State v. Dayton Traction Co. 18 Ohio C. C. 490, 10 Ohio C. D. 212. We think there is no doubt but the defendant in this case is a common carrier within the meaning of our statutes and the decisions of courts of other states. Section 4804, Compiled Laws of 1913, is constitutional, and the defendant, being a common carrier, is bound by its provisions. Whoever is a common carrier, it would seem, would be bound by the provisions of § 4804.

In the case of Gunn v. Minneapolis, St. P. & S. Ste. M. R. Co. 34 N. D. 418, 158 N. W. 1004, this court in an exhaustive opinion held that § 4804 was constitutional on the ground that the character of the work performed by Gunn belonged to an extrahazardous class, and was connected with the physical operation of the railroad. Considering the occupation of a conductor of a street car, we conclude that the

character of the employment is sufficiently hazardous to bring it within the meaning of a hazardous employment.

There is still another theory which would permit the plaintiff to maintain this action, and that is that § 4804 is not limited to railroads or other corporations, but includes all common carriers. This language of the statute would seem not only to include all kinds of railroads, including street railways, but also any other common carrier who undertook to convey persons or property from place to place for hire. The statute itself nowhere says it shall be limited to railroads or extrahazardous occupations in connection with the operation of railroads, but its language includes *common carriers,* without any specified degree of the hazard of the occupation or duties performed by the employees for such common carriers. The language of the section is exceedingly plain, and would seem to be susceptible of but one construction; that is, that it applies to all common carriers. It was within the discretion of the legislature to pass such a law, and the United States Supreme Court in the case of Missouri P. R. Co. v. Mackey, 127 U. S. 205, 32 L. ed. 107, 8 Sup. Ct. Rep. 1161, quoting the opinion of the lower court, said: "It is simply a question of legislative discretion whether the same liabilities shall be applied to carriers by canal and stage-coaches, and to persons and corporations using steam in manufactories." See also Missouri P. R. Co. v. Humes, 115 U. S. 512, 29 L. ed. 463, 6 Sup. Ct. Rep. 110; Barbier v. Connolly, 113 U. S. 27, 28 L. ed. 923, 5 Sup. Ct. Rep. 357; Soon Hing v. Crowley, 113 U. S. 703, 28 L. ed. 1145, 5 Sup. Ct. Rep. 730; Munn v. Illinois, 94 U. S. 113, 24 L. ed. 77; Pierce v. Van Dusen, 69 L.R.A. 705, 24 C. C. A. 280, 47 U. S. App. 339, 78 Fed. 693; State v. Northern P. R. Co. 36 Mont. 582, 15 L.R.A.(N.S.) 134, 93 Pac. 945, 13 Ann. Cas. 144; Honorable Isaac F. Redfield, chief justice of the Vermont supreme court, in the case of Thorpe v. Rutland & B. R. Co. 27 Vt. 140, 62 Am. Dec. 625, said: "The police power of the state extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property, within the state." And in the same case he says: "There is also the general police power of the state by which persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state, of the perfect right in the legislature to do which no question ever was,

or, upon acknowledged general principles, ever can be, made so far as natural persons are concerned. And it is certainly calculated to excite surprise and alarm that the right to do the same in regard to railways should be made a serious question." It would seem, therefore, that under all the authority we have examined, the legislature had full authority to pass such a law as § 4804, providing for the abolition of the fellow-servant rule, not only as to railroads, but as to all those persons or corporations which come within the definition of a common carrier as defined by our statute. The legislature had the discretion and power to enact the law in question, and it should be construed by the courts to mean what its plain and simple terms set forth and indicate. The legislature did not enact the law for a particular common carrier or for two or three common carriers as identified by the character and nature of the employment, but the law says *every common carrier*. This can mean nothing else excepting all common carriers as defined by statute.

Section 4804 is not unconstitutional as being in conflict with § 11 of our Constitution, which provides that "all laws of a general nature shall have a uniform operation." Such law is uniform in its operation as to the class, persons, or corporations affected; neither is such law unconstitutional as being contrary to § 20 of the Constitution of North Dakota.

The court below, in laying its foundation as a basis for its authority in directing a verdict in favor of the defendant, endeavored to incorporate therein the philosophy of certain mechanical laws. The court, however, in its effort to apply mechanical laws, signally failed for reasons which we will endeavor to point out. The court below made use of the following language: "Mr. Swanson testified they were going 3 miles an hour when the accident happened. There is other testimony really showing that he was going from 8 to 10 miles an hour by those who were present to see. That would be a question of dispute. Now, gentlemen, to determine upon this motion I must consider that this car was going at the rate of 3 miles an hour, not to exceed 4. Now, we are up against a few laws of mechanics here. Three miles an hour a man walks, as you are walking, practically 3 miles an hour. The average man walking will walk 3 miles an hour. If this car was going 3 miles an hour it would be going only as fast as the ordinary man

walks, and yet, with the car going only as fast as a man will walk—
only as fast as a man walks—it will plunge ahead—the testimony
differs on that, but suppose we say 8 feet—I think there is some testi-
mony here that it plunged ahead and made a record as one witness
said, but take the least.   Now, gentlemen, we know as a matter of
just plain sense,—that is all there is to it, just simple plain sense,—
that if the car was going 3 miles an hour as it was going over this
switch, and something had happened so that the rear wheels had run
off the switch, or in other words, if the car jackknifed, the car would
probably stop right where it was.   There would not be enough force in
the speed to have thrown it ahead as the testimony without question
shows that it was.   If that be true, who is responsible for this accident?
Who was the cause of this accident?   Swanson, and not the railroad
company.   Swanson is concededly a coemployee."

We see, therefore, that the court justified its position in the first
instance by invoking the application or philosophy of the laws of
mechanics, but later in the statement from which we quoted the court
seemed to have lost sight of the laws of mechanics, and instead thereof
applied or substituted therefor "just simple plain sense;" and basing
his analysis, not upon mechanical laws, but on the rule of plain sense,
the court finds, "If the rear wheels had run off the switch, or, in other
words, if the car jackknifed, the car would probably stop right where
it was."

It is quite evident that the court could in this case have reached no
conclusion which could be based upon the application of mechanical
laws.   Mechanical laws are certain in their operation.   Laws of
mechanics are not based upon uncertainties.   Before an application of
the laws of mechanics can be made, the *fundamental quantities* must
be known, or at least some of them must be known from which others
may be determined.   For instance, to determine the momentum which
the car in question possessed, it would be absolutely necessary to know
the weight of the car and the velocity which it traveled, for momentum
is the product of the weight or mass and the velocity.   In this case
neither the weight of the car nor the velocity which it traveled were
known.   Consequently, two of the fundamental quantities were lacking
with which to proceed to arrive at a mechanical truth or to demonstrate
a mechanical fact or law.   Nothing is known as a fact in this case about

the distance the car traveled, nor the time in which the car traveled such distance. Hence, there is no way to find the velocity of the car, for velocity is equal to distance divided by time. Neither do we know whether the velocity was linear or angular, nor do we know whether or not there was any acceleration; and if we knew for certain some or all the fundamental quantities, we might still be under the necessity of taking into account the composition or resolution of forces to arrive at a mechanical truth. All these fundamental quantities necessary for the purpose of determining a mechanical truth or demonstrating a mechanical law are lacking. They are unknown or uncertain. Therefore no application of mechanical laws worthy of the name can be made in this case. If the law of plain sense is a proper law by which to determine as near as may be all the disputed questions in the case, such as the rate of speed and velocity of the car, the distance it traveled after it left the switch, the resistance with which it was met when it touched the ground, they were all questions of disputed fact which it was the province of the jury to determine as best they could, considering all the circumstances and conditions which were submitted to them by the testimony of the witnesses.

The trial court directed the verdict for the defendant and against the plaintiff in this case. In other words, the trial court did not submit the questions of fact to the jury. The court is the medium or instrument through which litigants seek to have their rights, whether personal or property, litigated. The district court is the court to which litigants apply for the purpose of trying the issues of both law and fact. Such a court is composed of a judge and jury. It takes both a judge and a jury to make up such a court. The judge alone is not the court; the jury alone is not the court; both together constitute the court. The powers and duties of the judge and jury of such court are entirely separate and distinct. It is the exclusive duty of the judge to interpret the law of the case. It is the exclusive duty of the jury to pass judgment upon the facts of the case. The judge cannot invade the province of the jury. The right to a trial by jury is preserved to litigants in actions at law by the Federal and our state Constitutions, and in an action at law where the amount corresponds with that specified in the Constitutions as a minimum for which a trial by jury may be had, it is the right of the litigants under the Constitution to have a trial by jury,

and it is not the privilege of the judge who is presiding in such court to extend the right of trial by jury. Wherever there are disputed questions of fact from which men of ordinary intelligence might draw different conclusions, the findings upon such facts are for the jury, and the court cannot rightfully interfere with the prerogative of the jury nor the rights of the litigants in such case. It is just as presumptuous for the jury in such case to invade the province of the judge, and seek to pronounce the law of the case, as it is for the judge to invade the province of the jury and seek to pass judgment upon the facts of the case. The facts when disputed are exclusively for the jury. The important principle involved is that a judge is only part of the court, and such judge has certain well-defined duties to perform. The jury is the other important part of such court, and both together constitute the court for the purpose of trying issues of law and fact; and in such case the judge may not invade the province of the jury as defined by the Constitution, both Federal and state. It was one of the very wisest provisions made at the inception of our government to provide for the right of trial by jury. Much reflection and criticism have at times been made of the jury system, but it is difficult to imagine how a better system could have been devised or a better principle evolved than that, where one is a litigant, the questions of fact involved in the case should be decided by the judgment of twelve true and tried men, each of whom is a peer of the litigants, and each under solemn oath to well and truly try the issues involved and a true verdict return. Such a jury, we believe, drawn as it is from every walk and station of life, composed of men who have experience in various avocations and callings of life, composed of men drawn from the factory, the farm, the commercial world, the business world in general, from the ranks of labor, from the rich and poor, the well to do class, or any of the other and many different occupations or classes, are better fitted and better qualified by reason of the various experiences and sources of knowledge, and by reason of the variety of knowledge and experience which is thus secured upon a jury, to decide questions of fact so presented to it, than is a judge of the court who, like other individuals engaged in a professional career, whose knowledge of the callings, occupations, and activities in which persons are engaged may be no broader or more extensive than any of the individual jurors who are selected to try a given case. One

becomes a judge, as a rule, after having practised the profession of an attorney at law for many years. Prior to becoming an attorney he put in several years in some law school. Prior to that he spent many years in his preliminary education, and in pursuing his studies, has had little time or occasion to acquire the vast fundamental knowledge of the ordinary occupations and activities of life. The judge having thus been educated, and spent his time in pursuing and acquiring an education, cannot be said to be a better judge of fact which arises out of the many occupations and activities of life than men who are drawn directly from those occupations and activities. It is true that juries frequently disagree, but that is but evidence of their intelligence and keen analysis of questions of fact. They at times also arrive at results by their verdict which are looked upon with disfavor, but it is very questionable whether if twelve lawyers or twelve judges were selected upon the jury they would on the whole agree any better or arrive at more just results than do our juries, as now constituted, which are drawn from every walk of life. Lawyers and judges do not agree upon the law. There are thousands of questions presented to the highest courts in different states upon which such courts do not agree. The decisions of one court are often diametrically opposed to those of another court. The supreme tribunals of justice of each state quite frequently differ from each other upon well-known principles of law. The supreme court of a given state or of the United States will very frequently divide among themselves in their opinion as to what is the law of a given case. How, then, can it be assumed that in any sense they would be any better judges of the fact than a jury as provided by the Constitution.

In the case at bar the trial court directed a verdict for the defendant against the plaintiff in the case, notwithstanding there was a conflict of testimony concerning material facts. For instance, there was testimony showing that the car in question was going 3 miles an hour, and other testimony showing that the car was going from 8 to 10 miles an hour. How fast the car really was going was one of the questions of fact to be proved. There was a conflict of testimony as to the speed of the car. The speed of the car was a material fact to be proved in the case, as it went to the question of contributory negligence. That such disputed question of fact was not submitted to the

jury was prejudicial and reversible error. Whether the car at the time of the injury was thrown ahead 8 feet, 19 feet, or no feet, was a question of fact to be determined by the jury under all the testimony. The credibility of the witness is for the jury. The question of negligence or contributory negligence is one for the jury. All the disputed questions of fact in the case were for the jury. There were disputed questions of fact in this case upon which reasonable minds might differ and from which they might draw different conclusions. All such facts in the case should have been submitted to the jury. The trial court erred in directing a verdict for the defendant and against the plaintiff. The judgment of the trial court is reversed and a new trial granted, with the costs to plaintiff.

BRUCE, Ch. J., and BIRDZELL, J. I concur in the result and in the syllabus.

CHRISTIANSON, J. (concurring specially). I concur in a reversal of the judgment and in the principles of law announced in the syllabus. I agree with Mr. Justice Grace that § 4804, Comp. Laws 1913, does not violate the 14th Amendment to the Constitution of the United States, nor has it been shown that it violates any other constitutional provision, either state or Federal. I also agree that the defendant is a common carrier and within the provisions of this section, and that the plaintiff was engaged in work of such character as to bring him within the statute. I am also of the opinion that under §§ 4804 and 4805, Comp. Laws 1913, the questions of negligence and contributory negligence were in this case for the jury. I express no opinion upon the other matters discussed in the majority opinion.

ROBINSON, J. (concurring specially). The plaintiff brings this action to recover damages against the defendant by reason of its alleged negligence and failure to construct and keep in proper condition a circular switch joining the two lines of street railway on which the plaintiff was employed as a conductor. It is said that by reason of some defect in the circular switching, or by reason of plaintiff running the car too fast, it ran off the track and he was injured.

The action is based on chap. 203, Laws 1907,—the Fellow-Servant

Act. Its title is: "An Act Relating to the Liability of Common Carriers to Their Employees." It provides:

"Sec. 1. Every common carrier shall be liable to any of its employees . . . for all damages which may result from the negligence of any of its officers, agents or employees, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, ways or works.

"Sec. 2. In all actions . . . against any common carrier to recover damages for personal injuries to an employee, . . . the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, where his contributory negligence was slight and that of the employer was gross in comparison, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. All questions of negligence and contributory negligence shall be for the jury."

Clearly the case involved the question of negligence and contributory negligence, which by the plain words of the statute was for the jury, and not for the court. Judgment reversed.