FRANK WEHSNER, Administrator of the Estate of Reinhold Renke, Deceased, Respondent, v. KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, Appellant.

(178 N. W. 970.)

**Insurance — evidence held not to show payment of delinquent premium — waiver of conditions as to reinstatment held not shown.**

In an action on an insurance policy which had lapsed for nonpayment of a premium prior to the death of the insured, it is *held*, for reasons stated in the opinion, that the evidence is insufficient to establish payment of the delinquent premium and further insufficient to establish a waiver of the conditions of the policy regarding reinstatement.

Opinion filed June 26, 1920. Rehearing denied September 4, 1920.

Appeal from the District Court of Hettinger County, *Lembke,* J. Reversed and dismissed.

*V. H. Crane,* and *Miller, Zuger, & Tillotson (George W. Kingsley,* of counsel), for appellant.

A directed verdict should be given when the prima facie case has been completely destroyed by unimpeached and uncontradicted documentary evidence. Kazee v. Kansas City L. Ins. Co. 217 S. W. 341; Automobile Co. v. St. Louis Union, 187 S. W. 109; Darlington Lumber Co. v. Missouri P. R. Co. 243 Mo. 224, 147 S. W. 1052.

Soliciting or collecting agents have no authority to vary or modify contracts of insurance, to waive conditions thereof, or to extend time for the payment of premiums, other than the first premium. Fidelity Mut. L. Ins. Co. v. Russell, 75 Ark. 25, 86 S. W. 814; Russell v. Prudential Ins. Co. 176 N. Y. 178, 68 N. E. 252; Bryan v. National L. Ins. Co. 21 R. I. 149, 42 Atl. 513; German American Ins. Co. v. Humphrey, 62 Ark. 348, 35 S. W. 428; New York L. Ins. Co. v. O'Dom, 100 Miss. 219, 56 So. 379; Phipps v. Union Mut. Ins. Co. (Okla.) 150 Pac. 1083; Cayford v. Metropolitan L. Ins. Co. (Cal.) 91 Pac. 266; Iowa L. Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct.

Rep. 126; Madsen v. Maryland Casualty Co. (Cal.) 142 Pac. 51, Ann. Cas. 1913A 851, note.

A soliciting agent has no power or authority to waive any of the provisions of a policy contract, after the same has been executed, delivered, and put in full force and effect. Phipps v. Union Mut. Ins. Co. (Okla.) 150 Pac. 1083; Madsen v. Maryland Casualty Co. (Cal.) 142 Pac. 51, and cases cited.

*Jacobsen & Murray,* for respondent.

Life insurance policy providing for annual payment of premium and for forfeiture of policy upon nonpayment thereof is not a contract in force for a single year with the privilege of renewal from year to year, but a contract for the entire life of the insured, subject to forfeiture by failure to pay the annual premium when due. Hall v. Dakota Mut. L. Ins. Co. (S. D.) 158 N. W. 449; Noem v. Equitable L. Ins. Co. (S. D.) 157 N. W. 308; McDonald v. Equitable L. Ins. Soc. (Iowa) 169 N. W. 352.

"Payment of premium to insurer's authorized agent is payment to insurer. West v. National Casualty Co. (Ind.) 112 N. E. 115; Public Sav. Co. v. Manning (Ind.) 111 N. E. 945; Leison v. St. Paul F. & M. Ins. Co. 20 N. D. 317.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiff and from an order denying the defendant's motion for judgment non obstante or for a new trial. The action is brought by the administrator of the estate of Reinhold Renke to recover upon an insurance policy issued to him during his lifetime. The beneficiary is Karolina Renke, wife of the insured. She died November 5, 1918, and the insured two days later. The defense is that the policy had lapsed before the death of the insured.

It seems that in May, 1917, Reinhold Renke applied, through one Wilhelm, a soliciting agent, for insurance in the defendant company. The policy was issued on May 17, 1917, and the premiums are due annually after that date, with the usual provision for thirty days' grace without interest. At the time the policy was issued, Renke gave to Wilhelm his note for $78.30, the amount of the first premium, due on

November 1, 1917. This note did not become the property of the insurance company, but was used by Wilhelm as collateral for a loan secured by him from the Williams agency, of Mitchell, South Dakota. The Williams agency was the general agent of the defendant company, with authority to transact its insurance business as an agent in North and South Dakota and Minnesota. The net amount of the first premium, exclusive of commission, was remitted to the defendant company through this agency. About September 19, 1918, Wilhelm, Welch, who was then employed by the Williams agency, and one Lindsey, called on Renke for the purpose, as they say, of collecting this premium note. At that time the second premium was also long past due and the policy had lapsed for nonpayment according to its own provisions. After some talk with Wilhelm and Welch, Renke gave a postdated check for $84.74. This check is dated October 5, 1918, and the amount of it exactly corresponds with the amount that was due on the first premium note at the date of the check.

In the original complaint drafted by the plaintiff's attorney the giving of this first premium note was alleged, as well as its payment on or about the 25th day of September, 1918. It was further pleaded that at the time of the payment of this note Welch and Wilhelm extended the time of payment of the second premium to May 17, 1919, the alleged consideration for the extension being the payment of the note for the first premium. Waiver of a doctor's certificate as a condition of reinstatement is also pleaded. An amended complaint, however, was later filed, in which it was alleged that the first premium was paid. All statements respecting the giving of the note for the first premium were omitted, and it was alleged that the payment made in September, 1918, by the postdated check was payment of the second premium. Waiver of reinstatement conditions is alleged substantially the same as before.

The contentions of the parties upon these facts are: The appellant contends that the policy had lapsed; that the payment made by the insured was only the payment of the first premium with interest; that there had been no payment of the second premium; that no reinstatement had been effected; and that there had been no waiver on the part

of the insurance company of the provisions of the policy regarding reinstatement. The contentions of the respondent, on the other hand, are that there is sufficient evidence in the record to warrant the jury in finding that the second premium was paid by the postdated check, and that at the time of its payment the insured was reinstated, the agents waiving the conditions of the policy respecting the doctor's certificate.

The defendant's witnesses, particularly Wilhelm and Welch, identify the note which was the occasion for the call upon Renke in September, 1918, as being the note given for the first premium, and some of the testimony concerning the conversation with Renke regarding the payment of the note went in without objection. On the other hand, a careful reading of the record fails to disclose any evidence to support the allegations in the amended complaint that the postdated check was given for the second premium. It does not correspond in amount with the second premium; but, as previously stated, it does exactly correspond with the amount due on the first premium note at the date of the check. Respondent's counsel likewise has been apparently unable to point out any evidence in support of the allegations in the amended complaint regarding the payment of the second premium.

In addition to the depositions given by the officers of the company to the effect that the second premium had not been paid, the following testimony shows how conclusively the check given by Renke was identified as having been given in payment of the first premium note: (It will be noted, too, in this connection that in so far as the testimony related to a transaction with the deceased the ruling of the trial court was favorable to the plaintiff. But the testimony went in without objection.)

Welch testified, without objection on this ground, that he was superintendent of agents for the J. E. Williams agency; that in September, 1918, J. E. Williams, of the Williams agency, turned over to him a number of notes for collections; that among them was the note which Renke had given to Wilhelm and which Wilhelm had put up as col-

lateral with the Williams agency. The testimony of which relating directly to the vital transaction is:

Q. What date was it, Mr. Welch, that you called on Mr. Reinhold Renke in company with Mr. Wilhelm and Mr. Lindsey with reference to his note?

A. September 19th or 20th.

Q. Did you see Mr. Renke on that date?

A. Yes, sir.

Q. Did you have any talk with him?

Mr. Murray: The plaintiff objects on the ground that it appears that the witness is an agent of the defendant company, and the question calls for a conversation with Reinhold Renke, who is now deceased, and the testimony is therefore inadmissible under subdivision 2, § 7871, Comp. Laws 1913. ˙

The Court: Objection sustained.

After a brief cross-examination the court sustained the objection to the testimony relating to transactions with the deceased. The testimony continues:

Mr. Murray: I will withdraw the objection.

Q. I will ask you, Mr. Renke (meaning Mr. Welch) what your mission was at the time you called on Mr. Renke?

A. I called on him for the purpose of collecting a note I had of Mr. Renke.

Q. Do you remember the facts of the note as to its date and amount?

A. The note, as I recall it, was dated the forepart of May, 1917, was due, I think, November 1, 1917, and the amount was $78.30.

Mr. Murray: We object to that as not the best evidence.

Q. State what you said to Mr. Renke and what Mr. Renke said to you?

A. I told him that I had the note for collection.

Q. I will ask you to state what Mr. Renke said to you after you told him what you were there for?

A. He said that he was unable to pay the note at that time; that he

was threshing and as soon as he marketed his crop he would be in shape to pay the note.

Q. What did you say?

A. I suggested that he give me a postdated check for the amount of the note to save me making the trip back, as I had a good many notes to collect. He agreed to it.

Q. Pursuant to that conversation did Mr. Renke give you a check?

A. Yes, sir.

Q. I show you exhibit, marked for identification "plaintiff's exhibit B;" I will ask you to state whether or not that is the check that Mr. Renke gave you in payment of the note?

A. (Witness examines paper) It is, yes, sir.

Q. What did you do with the check?

A. I took the check to the Farmers State Bank of Bentley, with two or three other checks I had, and they cashed the checks and gave me a draft.

Q. What did you do with the note?

A. I turned it over to Mr. Renke.

Q. Who was present at the time this conversation took place?

A. Mr. Lindsey and Mr. Wilhelm.

Q. In that conversation did Mr. Renke tell you what the note you had in your possession and were trying to collect was given for?

A. I do not recall that he did.

Q. Do you know what the note was given for?

Mr. Murray: Objected to as calling for a conclusion; no foundation laid. No showing that this witness solicited the insurance. On the further ground that it is hearsay.

The Court: Objection overruled.

A. This note was given in payment of the first premium on his policy. In collecting it I told him that I was collecting the note for the first premium.

Q. To whom was the note payable?

A. Constantine Wilhelm.

Q. What interest did it bear?

A. Six per cent from date.

Q. Why did you date the check October 15th, when you were there on the 15th of September, 1918?

Mr. Murray: Objected to.

The Court: Objection overrudel.

A. I asked Mr. Renke when he thought he would have the money; that is, the date he figured he would have it, so I dated the check accordingly.

The respondent, however, relies upon certain testimony as establishing a waiver of the usual reinstatement requirements. The witness Adam Kelsch, testifying concerning statements made by Wilhelm to one Krouse, stated that Wilhelm asked Krouse to take out a policy and told him that "Renke had just fixed up so that if he died to-morrow he would get $2,000." Krouse corroborated this statement. Aside from any question as to the binding force of this admission upon the defendant company, we are of the opinion that the evidence is insufficient to establish either the payment of the second premium, a waiver, or a reinstatement. We think it clearly established by this record that the only premium ever paid by the insured was the first annual premium, and that this was paid after the policy had lapsed; also that the evidence is insufficient to support any finding to the contrary. He had, of course, received consideration in the insurance had for the year plus the period of grace that the policy was in full force. It is not shown that the agents had any authority to extend the payment of the second premium for a year or for any other period, and this is contrary to the express provisions of the policy.

There being no evidence of the payment of the second premium, of a reinstatement effected in the manner called for by the policy, or of a waiver of compliance with the reinstatement conditions, the trial court should have granted the defendant's motion for an instructed verdict. The judgment appealed from is reversed and the case dismissed.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur.

GRACE, J. (dissenting). This is an appeal from a judgment in favor

of the plaintiff, and from an order denying defendant's motion for judgment non obstante, and for a new trial.

Reinhold Renke, the insured, died, and the action is brought by the administrator of his estate, to recover upon an insurance policy in the sum of $2,000. The beneficiary, Karolina Renke, was the wife of the insured, and she died shortly prior to his death. The insured left six children ranging in age from four to fourteen years.

The defendant interposed a defense that the policy had lapsed prior to the death of the insured. The issues, as framed, were tried to a jury, and a verdict returned in favor of plaintiff.

At the time plaintiff took out the policy of insurance, he gave a promissory note to the agent of the plaintiff, one Wilhelm, for the amount thereof, which note has at all times remained his, and has never become the property of the insurance company.

The policy was issued May 17th, and a premium of $78.30 was settled for, by plaintiff giving his note for that amount, due November 1, 1917.

The Williams agency of Mitchell, South Dakota, was the general agent of the insurance company in North and South Dakota and Minnesota, with authority to transact its insurance business as an agent therein.

Wilhelm borrowed money on the note given for the premium, from the Williams agency. The plaintiff paid to the insurance company $87.74 by a check which was made payable to George Welch, and indorsed by him, as such, to the company, and bore date October 5, 1918, and it is claimed by the plaintiff to be in payment of the second premium; that it was received, as such, by the agent, and it in fact speaks for itself; it needs no explanation. What is written thereon is not to be disputed. It was made payable to Welch, the agent of the Kansas City Life Insurance Company. The defendant received the full amount thereof. It had no claim against plaintiff, other than the second premium, as it never owned the first premium note.

The defendant had witnesses to show the surrounding circumstances of the execution and delivery of this check. Plaintiff objected to all this, and objected to the witnesses testifying, by reason of the provisions of § 7871, Comp. Laws 1913, which, so far as material here,

provides: "Any civil action or proceeding by or against executors, administrators, heirs at law, or next of kin, in which judgment may be rendered, or order entered, for or against them, neither party shall be allowed to testify against the other, as to any transaction whatever, with, or statement by, the testator or intestate, unless called to testify thereto, by the opposite party; *and where a corporation is a party in proceedings mentioned in this section, no agent, stockholder, officer or manager of such corporation shall be permitted to testify to any transaction* had with the testator or intestate."

The defendant's witnesses were Welch, Williams, Wilhelm and Lindsey. With the exception of the latter, they were the agents of the defendant. There is no dispute upon this point: Lindsey was not an agent of the defendant, but his testimony is without any real probative force. He did not hear all the conversation, and his testimony, as a whole, was as favorable to the plaintiff as to the defendant.

Objection was seasonably interposed to the reception of the evidence given by the agents of the defendant, and to their competency as witnesses. It was the duty of the court, under the statute, to prohibit such witnesses from testifying.

It will be noticed that the statute prohibits the agent, stockholder, officer, or manager of the corporation from testifying to any transaction had with the testator or intestate.

The statute does not say their evidence, upon objection thereto, shall be inadmissible or incompetent, so that, if not objected to, it might be admissible and thus be permitted to go into the record, but it plainly says they shall not testify.

This provision in § 7871, Comp. Laws 1913, is an amendment of § 7253, Laws 1905. The latter section contains no provision or prohibition, with reference to agents of corporations, as is contained in the former section.

Section 7253 was amended by chapter 119, Laws of 1907, so as to include the prohibition we are discussing. It was evidently thought that the statute, prior to its amendment, was broad enough to include the prohibition; but, in the case of First Nat. Bank v. Warner, 17 N. D. 81, 114 N. W. 1085, 17 Ann. Cas. 213, this court construed § 7253,

Laws 1905. The decision was written by Chief Justice Morgan, and it was there held that the prohibition of the statute covered only the evidence of parties to actions or proceedings, but did not include the agents of the parties.

This case was followed in another decision subsequently written, also, by Chief Justice Morgan,—the case of Cardiff v. Marquis, 17 N. D. 117, 114 N. W. 1088. These decisions, without doubt, were what moved the legislature to amend § 7253, Laws 1905, by the enactment of chapter 119, Laws of 1907, which is § 7871, Comp. Laws 1913, so as to prohibit the agents, etc., of corporations from testifying to transactions with deceased.

If the agents of the defendant in this case had been prohibited, by the court, from testifying, as they should have been, and as the statute plainly says they shall be, there would nothing remain of the defense interposed. It was the plain and manifest duty of the trial court to enforce § 7871; it is also the manifest duty of this court to do likewise. For the statute is one which is grounded upon public policy.

The majority decision in this case, in effect, abrogates the statute, turns aside the will and purpose of the legislature, as expressed in that statute, and in effect, if not directly, holds that the agents, stockholders, etc., of corporations may testify, in regard to transactions with deceased.

We are convinced that great harm will result from this decision, and from the erroneous interpretation of the statute. The statute is plain and cannot be misunderstood; it means what it says. The true interpretation of that statute is contained in the decision in Williams v. Clark, 42 N. D. 107, 172 N. W. 826. It is true that the majority of the court concurred only with the conclusions of the writer there, who was the same as the writer of this dissenting opinion; but, as the competency of the witnesses was one of the principal questions in that case, the reasoning there, which holds that such statute prohibits those from testifying, mentioned in it, became the law of that case; and it is a correct interpretation of the statute under consideration.

The plaintiff here objected to the competency of the witnesses. One objection was sufficient. It is not claimed that plaintiff did not make a proper or sufficient objection to such witnesses testifying. If the plaintiff were an appellant, his objections, if they had been overruled,

would have been sufficient upon which to base assignments of error; but, as we view the matter, even if there had been no objection on the part of the plaintiff to the competency of the witnesses, it would have been the duty of the court, under the statute, as their disqualification under the statute appeared, to have prohibited them from testifying.

If, as in effect it is held in the majority opinion, the agent, stockholder, or manager of the corporation may testify, and be a competent witness in this case, then under that theory, and under the effect of the holding in the majority opinion, they may testify to a transaction with the deceased; and that conclusion is diametrically opposed to the plain words of the statute under consideration.

Section 7871 was also recently construed in the case of Druey v. Baldwin, 41 N. D. 473, 172 N. W. 664, 182 N. W. 700. In that case, incompetent witnesses sought to give testimony, and this court in that case used the following language:

"Objection was likewise made by the appellant to the competency of the witnesses to so testify, under the provisions of the section quoted (§ 7871). This testimony substantially covers the direct testimony in the record, of delivery or nondelivery of the deed in question by the deceased to the appellant.

"We are clearly of the opinion that the objection so made to the competency of these witnesses to so testify was good, and that the testimony in question was inadmissible."

It is clear to my mind that the decision in that case, and in the Williams-Clark Case, constitutes a correct interpretation of the statute involved, and that the holding of the majority opinion in the case at bar is erroneous. It is also clear to my mind, that there is sufficient evidence to sustain the verdict, and that the judgment and order appealed from should be affirmed.

BRONSON, J. I dissent. The record in this case is not free from doubt. The majority opinion has concluded, as a matter of law, that the record clearly discloses that only the first annual premium was ever paid by the insured, and that this was paid after the policy had lapsed; that the record does not disclose that the agents had any authority to extend the payment of the second premium, contrary to the express pro-

visions of the policy. Upon the issues, the material questions involved were the payment and acceptance of the second annual premium and the continuance of the policy in force, through waiver of the defendant, and the action of its agents. If in the record there are disputed questions of fact upon which reasonable men might draw different conclusions, these questions, involving also the credibility of the witnesses, were primarily and fundamentally for the jury. Akin v. Johnson, 28 N. D. 205, 148 N. W. 535; Peterson v. Fargo-Moorhead Street R. Co. 37 N. D. 440, 164 N. W. 42. As Justice Grace has discussed in his dissenting opinion, considerable incompetent testimony was adduced concerning transactions with the deceased. In determining as a matter of law that there is no evidence for the jury upon material issues involved, this incompetent testimony cannot properly be considered. The question, therefore, is whether there is any legal evidence in the record upon which the verdict can be supported. State Bank v. Bismarck Elevator & Invest. Co. 31 N. D. 102, 153 N. W. 459. There is some evidence in the record to the effect that one Williams was the general agent for the defendant; that one Welch was an employee and agent of this general agent; that one Wilhelm was a soliciting agent of the defendant. The policy issued, concededly, was in force from May 27, 1917, to May 27, 1918. A premium note for $78.30 had been given in payment of the first premium. It was made payable to Wilhelm. The defendant did not, and does not, claim such note as its property. It represented apparently, in whole or in part, the agent's fee or commission due from the defendants. This note was placed with the general agent, as collateral for a loan. In September, 1918, Welch, the representative of the general agent, Wilhelm, and another party, visited the deceased at his place where he was threshing. At that time the policy of life insurance, by its terms, had lapsed. By its provisions, the failure to pay the premium on or before the date when due, or the failure to pay any premium note when due, rendered the policy null and void, without any action or notice by the company. By its provisions, in case of the default in the payment of any premium or of any premium note when due, the company will reinstate such policy at any time, upon written request by the insured, accompanied by evidence of insurability satisfactory to the company, and of the payment of all premium arrears

and indebtedness existing at the date of default, plus 5 per cent interest. By its terms, no agent had power to modify the contract, to extend the time of payment of premiums, or to waive any forfeiture. The note given for the first premium was dated in May, 1917, and fell due in November, 1917. By the strict terms of the policy, this note, when not paid in November, 1917, rendered the policy null and void. The majority opinion recognizes at least that the policy was in force for a period of one year, plus the period of grace. The defendant does not assert that the policy lapsed before the expiration of a year after its issuance. Apparently there is at least a recognized waiver on the part of the defendant concerning at least one of the strict provisions contained in this contract of insurance issued to the deceased. For, the premium note was a consideration for the policy whether given to the defendant or its agent. When the general agent, through his representative, went to the farm of the deceased to see him about this policy or the premium note given therefor, the conditions in the contract that provided for the immediate forfeiture of the policy upon the failure to pay the premium could be waived by such general agent. Hall v. Dakota Mut. L. Ins. Co. 37 S. D. 342, 158 N. W. 449; Noem v. Equitable L. Ins. Co. 37 S. D. 176, 157 N. W. 308; McDonald v. Equitable Life Assur. Soc. 185 Iowa, 1008, 169 N. W. 352; New York L. Ins. Co. v. Eggleston, 96 U. S. 572, 24 L. ed. 841; Lyke v. First Nat. Life Acci. Ins. Co. 41 S. D. 527, 171 N. W. 603; Hartford Life Annuity Ins. Co. v. Unsell, 144 U. S. 439, 36 L. ed. 496, 12 Sup. Ct. Rep. 671; Michigan-Idaho Lumber Co. v. Northern F. & M. Ins. Co. 35 N. D. 244, 160 N. W. 130. It may be that the preponderance of evidence in this case is to the effect that these three persons went out to see the deceased for the sole purpose of collecting the premium note theretofore given by him; that they did not waive any of the provisions of the policy; and did not reinstate the policy of the deceased. There is evidence in the record, however, from the mouths of three witnesses to the effect that Wilhelm, the agent of the defendant, on this farm of the deceased stated that he had settled up with the deceased, and that if he died to-morrow he would get $2,000. The check issued by the deceased was given to the representative of the general agent, Welch, as agent of the Kansas City Life Insurance Company. It was

indorsed by Welch, as agent of the Kansas City Life Insurance Company. The doubtful circumstance concerning this check is that in amount it equals the first premium note given, plus interest. On the other hand the circumstance is doubtful why such check should be made payable to the agent of the Kansas City Life Insurance Company, when, as the defendant contends, the first premium note was not the property of the defendant and it had no concern with the same. If the mouth of the deceased were not sealed by death, and the mouths of defendant's agents sealed by the statute, these doubtful circumstances might be explained. The defendant's witnesses totally deny making any such statement concerning settlement with the deceased. Upon the record the check given by the deceased was given in payment either of the first premium note, or of the second annual premium. If it was true that the defendant's agents admitted settlement with the deceased and made statements to the effect that the policy was in force (because, assuredly, the $2,000 would not be payable unless the policy was in force), the check necessarily must have been in payment of the second annual premium. If, on the other hand, no such admission or statements were made, the check undoubtedly was given in payment of the first premium note. These were questions of fact for the jury, concerning which there was a sharp conflict in the evidence. If the second annual premium was paid and accepted, and the policy, without further acts, treated as reinstated by the agents, the defendant, upon principles of waiver and estoppel, may not insist upon the express terms and conditions of the policy concerning reinstatement. The jury, through its findings, has determined that this check was given in payment of the second annual premium. I am not prepared to state, as a matter of law, that this finding should be reversed.